**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email: *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (*pro hac vice* to be filed)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
Email: *jstrauss@kaplanfox.com*

*Attorneys for Plaintiff*

[*Additional Counsel Appear on Signature Page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCAS CRANOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINATE EDUCATION, INC.,<br><br>Defendant. | Case No.  8:22-cv-1404<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lucas Cranor ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Illuminate Education, Inc. ("Illuminate" or "Defendant") and makes the following allegations based upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## **INTRODUCTION**

1.      Illuminate is a software company focused on education that provides "a streamlined solution that helps educators to accurately assess learning, identify needs, align whole child supports, and drive school improvement in order to equitably accelerate growth for every learner."[1]

2.      Illuminate services 17 million students in 5,200 schools and districts across all 50 states.

3.      Illuminate has several products currently at use in America's schools that require the collection of students' personal information, including but not limited to:

➤      FastBridge, which identifies students' academic and social-emotional behavior needs faster, align the right interventions at the right time, and measure whether interventions are helping students catch up;

➤      DnA, a standards-based assessment creation administration solution; and

➤      eduCLIMBER, an interactive district-level to whole-child data management that strengthens implementations, including student need identification and intervention effectiveness.

4.      Illuminate also offers popular platforms for districts and schools, such as Skedula, IO Classroom, and PupilPath.

---

[1] See https://www.illuminateed.com (last visited July 28, 2022).

5.    These products collect, among other things, student attendance and grades, names, birth dates, class schedules, behavioral records, and whether they qualify for special education or free or reduced-price lunches.[2]

6.    As part of its core business in providing education-related software, Illuminate stores demographic information, including name, mailing address, email address, and date of birth, student education and behavioral records, health-related information, including student immunizations, and vision and hearing screening results, and system usernames and passwords.[3]

7.    Illuminate touts that "[w]e protect your data like it's our own."  But according to news reports, on January 8, 2022, Illuminate became aware that an unauthorized third party was able to gain access to databases of school and student information maintained by Illuminate.[4]

8.    Despite Illuminate's investigation finding that "certain databases, containing potentially protected student information" had taken place between December 28, 2021 and January 8, 2022, Illuminate did not notify schools of the breach until late March 2022 at the earliest.[5]  In fact, Plaintiff's own notification letter was dated April 29, 2022, and confirmed that Defendant concluded its investigation on March 24, 2022.

---

[2] *See* https://www.the74million.org/article/74-interview-cybersecurity-expert-levin-on-the-harms-of-student-data-hacks/ (last visited July 28, 2022).

[3] *See* https://www.illuminateed.com/resources/security-privacy/ (last visited July 28, 2022).

[4] *See* https://www.nydailynews.com/new-york/education/ny-hack-illuminate-online-gradebook-compromised-personal-data-20220325-ahy3b3b3t5cjzajau63muqcniq-story.html (last visited July 28, 2022); *see also* https://www.infosecurity-magazine.com/news/illuminate-breach-impacts-school/ (last visited July 28, 2022).

[5] *See* https://www.infosecurity-magazine.com/news/illuminate-breach-impacts-school/ (last visited July 28, 2022).

9.      As revealed by a breach notification letter sent by Illuminate to a school district in Colorado:



Excerpt of a breach notification letter distributed by Colorado's Pueblo County School District 70 (Source: KOAA News5)

10.     Although Illuminate has not disclosed what was collectively compromised, based on news reports, the compromised files and data included both personal and medical information not limited to names, birthdays, ethnicities, home languages, and student ID numbers of current and former students going back to the 2016-17 school year.  *Id.*  Other information, such as whether students get special education services, class and teacher schedules, and whether kids receive free lunch was also disclosed.  *Id.*  Academic and behavior information may also have been disclosed (collectively "Personally Identifiable Information" or "PII").[6]

11.     Defendant's failure to ensure that its services and products were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data privacy, had jeopardized the security of their PII,

---

[6] *See* https://www.infosecurity-magazine.com/news/illuminate-breach-impacts-school/ (last visited July 28, 2022).

has violated applicable data privacy law, and has put them at serious risk of fraud and identity theft.

12.   Defendant also failed to ensure that Plaintiff's and Class Members' reasonable expectations for data privacy would be maintained, jeopardizing the security of their PII and putting them at serious risk of fraud and identity theft by failing to adequately maintain the security of Plaintiff's and Class Members' PII.

13.   Plaintiff brings this class action alleging that Defendant's conduct, as described more fully herein, caused Plaintiff's and others' PII to be exposed and stolen because of the failure of Defendant to safeguard and protect their sensitive information.  Plaintiff seeks damages, and injunctive and other relief, on behalf of themselves and similarly situated consumers.

## PARTIES

14.   Plaintiff Cranor is a resident of Colorado.  Mr. Cranor received two notice letters from Illuminate dated April 29, 2022 stating that both of his children's PII was compromised by the Data Breach.  Mr. Cranor's children are minors who attend school in Colorado.  Plaintiff is filing these claims as a real party in interest for himself and his minor children pursuant to Federal Rule of Civil Procedure 17(a)(1)(C).

15.   Defendant Illuminate Education, Inc., is a California corporation with its principal place of business in Irvine, California.

## JURISDICTION

16.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than Defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Illuminate Education, Inc. because it is headquartered in California, is authorized to and conducts business in California, has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avail itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, has intentionally availed itself of the laws and markets within this District through its promotion, marketing, distribution and sales activities in this District, and a significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

### A.     The Data Breach

19.     Illuminate promised that it would protect students' PII and failed to do so.  On its website, it states that "Illuminate stores such information in locations outside its facilities, such as on servers…or with secure cloud-storage services"[7]:

## Security

We protect your data like it's our own. In alignment with the Family Educational Rights and Privacy Act (FERPA), we deploy meaningful safeguards to protect student data.

## Student Data

We pledge our unwavering commitment to student data privacy.



---

[7] *See* https://www.illuminateed.com/resources/security-privacy/.

20.     Illuminate prides itself on an "unwavering commitment to student data privacy" and promises to "deploy meaningful safeguards to protect student data."

21.     Despite these promises, on March 24, 2022 Illuminate announced that it "became aware of suspicious activity in a set of isolated applications within their program [and] immediately took steps to secure the affected applications and launched an investigation with external forensic specialists to determine the nature and scope of activity."[8]

22.     Illuminate stated that its own investigation confirmed that "certain databases, containing potentially protected student information were subject to unauthorized access between December 28, 2021 and January 8, 2022" (the "Data Breach")[9]  It took Illuminate nearly 3 months to notify those affected by the breach.

23.     The Data Breach occurred after an attacker accessed systems operated by Illuminate, a software platform designed for K-12 school districts that allows educators to track and report on a number of attributes, including grades, attendance and class schedules, as well as to communicate with parents.[10]

24.     According to reports, some districts and parents asked state and federal authorities to investigate the Data Breach, accusing Illuminate of failing to encrypt student data kept on its servers – even though the company had previously told the districts it was meeting such legal requirements for data protection.[11]

25.     The Data Breach impacted students enrolled during the current school year in most cases, but has also impacted at least some former students enrolled as far back as 2016.[12]

---

[8] *See* https://www.bankinfosecurity.com/illuminate-education-mega-breach-impacts-k-12-students-a-19032 (last visited July 28, 2022).

[9] *Id.*

[10] *Id.*

[11] *See* https://thejournal.com/articles/2022/05/17/illuminate-data-breach-spreads-to-fifth-state-as-oklahoma-city-notifies-parents.aspx (last visited July 28, 2022).

[12] *See* https://thejournal.com/articles/2022/05/15/list-of-all-schools-confirmed-impacted-by-illuminate-education-data-breach.aspx (last visited July 28, 2022).

26.     So far, the Data Breach has potentially affected millions of students.  In New York alone, over 1 million students have had their PII disclosed.  In Colorado, over 135,000 students have been affected.[13]   School districts in California, Oklahoma, Washington, and Connecticut have also been affected.[14]   Unfortunately for schools and students across the country, more districts find out that they have been affected by the breach every day.  We now know that millions of students have been affected by this incident, from coast to coast in some of the largest school districts in the nation.[15]

**B.     Impact of the Data Breach**

27.     The Data Breach creates a heightened security concern for students and parents who use Illuminate because their PII, including unique academic records and other sensitive financial and personal information was included.

28.     Students' and children's privacy is very important.  Indeed, numerous state and federal laws safeguard it.  Furthermore, students and children are more vulnerable to identity theft and other consequences of their PII falling into the wrong hands because they are less likely to regularly monitor this information.[16]

29.     Defendant's conduct is particularly egregious because some education vendors typically do not know a whole lot about the students they're serving.  In one interview, a cybersecurity expert stated that "[t]he Illuminate Education breach did

---

[13] *See* https://www.govtech.com/education/k-12/illuminate-education-data-breach-exposes-student-information (last visited July 28, 2022); *see also* https://thejournal.com/articles/2022/05/12/illuminate-data-breach-impact-in-co-grows-to-7-districts-plus-1-ca-district-and-3-in-ct.aspx (last visited July 28, 2022).

[14] *Id*.; *see also* https://thejournal.com/articles/2022/05/17/illuminate-data-breach-spreads-to-fifth-state-as-oklahoma-city-notifies-parents.aspx (last visited July 28, 2022); https://www.the74million.org/article/after-huge-illuminate-data-breach-ed-techs-student-privacy-pledge-under-fire/ (last visited July 28, 2022).

[15] *Id.*

[16] *See* https://www.credit.com/personal-finance/use-credit-monitoring-protect-childs-identity/ (last visited July 28, 2022).

involve a pretty large swath of sensitive information about students that could be used by criminals to commit identity theft and credit fraud against students."[17]

30.     What's more, "it has taken several months for individuals who were affected to find that out. The gap between when the company first learned about the incident and when parents are informed of the incident so they can take steps to protect their children is really too long."[18]

31.     In addition to harms associated with the disclosure of student information, the Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."  17 C.F.R. § 248.201.  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."  *Id.*

32.     Defendant had a duty to keep PII confidential and to protect it from unauthorized disclosures.  Plaintiff and Class Members provided their PII to Illuminate with the understanding that Illuminate and any business partners to whom Illuminate disclosed PII would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

33.     Defendant's data security obligations were particularly important given the substantial increases in data breaches in recent years, which are widely known to the public and to anyone in Illuminate's industry of data collection and transfer.[19]

---

[17] *See* https://www.the74million.org/article/74-interview-cybersecurity-expert-levin-on-the-harms-of-student-data-hacks/ (last visited July 28, 2022).
[18] *Id.*
[19] *See* https://marketbrief.edweek.org/marketplace-k-12/pearson-will-pay-1-million-fine-understating-2018-data-breach-misleading-investors/ (last visited July 28, 2022).

34.   Data breaches are not new.  These types of attacks should be anticipated by companies that store sensitive and personally identifying information, and these companies must ensure that data privacy and security is adequate to protect against and prevent known attacks.  Indeed, Pearson Education recently paid $1 million in fines for failing to properly disclose information about its data breach.[20]

35.   It is well known among companies that store sensitive personally identifying information that sensitive information is valuable and frequently targeted by criminals and that they need to implement appropriate security measures to keep criminals from accessing PII.

36.   Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.  This is particularly true of children's personal information, because they are less likely to conduct regular credit monitoring and their information is more likely to be on the "dark web."[21]

37.   There may be a time lag between when the harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.  According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from

---

[20] *Id.*

[21] *See* https://www.kqed.org/news/11898753/experts-say-you-should-freeze-your-childrens-credit-heres-how (last visited July 28, 2022).

1                      data breaches cannot necessarily rule out all future

2                      harm.[22]

3        38.     With access to an individual's PII, criminals can commit all manners of

4 fraud, including obtaining a driver's license or official identification card in the

5 victim's name but with the thief's picture, or filing a fraudulent tax return using the

6 victim's information.

7        39.     PII is such a valuable commodity to identity thieves that once the

8 information has been compromised, criminals often trade the information on the dark

9 web and the "cyber black-market" for years.  As a result of recent large-scale data

10 breaches, identity thieves and cyber criminals have openly posted stolen PII directly

11 on various illegal websites making the information publicly available, often for a

12 price.

13        40.     Illuminate is, and at all relevant times has been, aware that the sensitive

14 PII it handles and stores in connection with providing its services is highly sensitive.

15 As a company that provides services involving highly sensitive and identifying

16 information, Illuminate is aware of the importance of safeguarding that information

17 and protecting its systems and products from security vulnerabilities.

18        41.     Illuminate was also aware, or should have been aware, of regulatory and

19 industry guidance regarding data security.

20        42.     Despite the known risk of data breaches and the widespread publicity

21 and industry alerts regarding other notable data breaches, Defendant failed to take

22 reasonable steps to adequately protect its systems from being breached and to

23 properly secure its platforms, leaving its clients and all persons who provide sensitive

24 PII to its clients exposed to risk of fraud and identity theft.

25        43.     As a result of the events detailed herein, Plaintiff and Class Members

26 suffered harm and loss of privacy, and will continue to suffer future harm, resulting

27

28 ---

[22] *Report to Congressional Requesters*, U.S. Government Accountability Office, (June 2007), http://www.gao.gov/new.items/d07737.pdf.

from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; disclosure of their need for special education; disclosure of financial status; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of PII; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of PII.

44.     As a result of the Data Breach, Plaintiff and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

### PLAINTIFF'S EXPERIENCES

45.     Plaintiff Cranor learned of the Data Breach via two notice letters from Illuminate (one for each of his two children) dated April 29, 2022, and received the letters on or about that date.

46.     In the letter, Defendant stated that it "is now notifying you of this incident because our investigation has determined that your minor's information was contained in the affected databases."  The letter went on to disclose that "[t]he affected databases may have contained the following: your minor's name, student identification number, academic and behavior information, enrollment information, accommodation information, special education information, and/or student demographic information."

47.     Plaintiff's children, both minors, were enrolled at a school in Colorado.

48.     As a result of learning of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the

legitimacy of the news reports of the Data Breach, exploring credit monitoring and identity theft insurance options, and monitoring his children's information.

49.   Plaintiff suffered actual injury in the form of damages to and diminution of the value of PII – a form of intangible property that Plaintiff entrusted to Defendant for the purpose of education, which was compromised in and as a result of the Data Breach.

50.   Plaintiff has suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

51.   Plaintiff has suffered imminent and impending injury arising from the disclosure of their academic information and behavior and for the substantially increased risk of fraud, identity theft, and misuse resulting from PII being placed in the hands of unauthorized third parties and criminals.

52.   Plaintiff has a continued interest in ensuring that PII, which remains backed up in Defendant's possession, is protected and safeguarded from further and future breaches.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following nationwide class (the "Class"):

> All persons in the United States whose PII was exposed to
> unauthorized third parties as a result of the compromise of
> Illuminate Education, Inc. that occurred around December
> 2021 and January 2022.

Plaintiff reserves the right to modify, change, or expand the Class definition, including proposing additional subclasses, based on discovery and further investigation.

54.     Plaintiff further brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Subclass (the "Colorado Subclass"):

> All residents of Colorado whose PII was exposed to
> unauthorized third parties as a result of the compromise of
> Illuminate Education, Inc. that occurred between
> December 2021 and January 2022.

Plaintiff reserves the right to modify, change, or expand the Colorado Subclass definition, including proposing additional subclasses, based on discovery and further investigation.

55.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

56.     The Classes meet all of the criteria required by Federal Rule of Civil Procedure 23(a).

57.     **Numerosity:** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, it appears that the membership of the Classes are in the tens of thousands. The identities of Class members are also ascertainable through Defendant's records.

58.     **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.     Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.     Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

c.     Whether and when Defendant actually learned of the Data Breach;

d.     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

e.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g.     Whether Defendant was negligent or negligent per se;

h.     Whether Plaintiff and Class Members are entitled to relief from Defendant as a result of Defendant's misconduct, and if so, in what amounts; and

i.     Whether Class members are entitled to injunctive and/or declaratory relief to address the imminent and ongoing harm faced as a result of the Data Breach.

59.     **Typicality:** Plaintiff's claims are typical of the claims of the Classes he seeks to represent, in that the named Plaintiff and all members of the proposed Classes have suffered similar injuries as a result of the same misconduct alleged herein.  Plaintiff has no interests adverse to the interests of the other members of the Classes.

60.     **Adequacy:**  Plaintiff will fairly and adequately protect the interests of the Classes and has retained attorneys well experienced in class actions and complex litigation as their counsel, including cases alleging breach of privacy and negligence claims arising from corporate misconduct.

61.   The Classes also satisfy the criteria for certification under Federal Rule of Civil Procedure 23(b) and 23(c).  Among other things, Plaintiff avers that the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; that Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Classes as a whole; that questions of law or fact common to the Classes predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff also avers that certification of one or more subclasses or issues may be appropriate for certification under Federal Rule of Civil Procedure 23(c).  Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Classes will not be difficult.

62.   Plaintiff and other members of the Classes have suffered damages as a result of Defendant's unlawful and wrongful conduct.  Absent a class action, Defendant's unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Classes will not be able to effectively litigate these claims and will suffer further losses.

# CLAIMS FOR RELIEF

## COUNT I
### Negligence

63.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

64.    Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Subclass.

65.    Illuminate negligently sold its services and products as well protected, claiming that "[w]e take security measures—physical, electronic, and procedural—to help defend against the unauthorized access and disclosure of your information" despite leaving Plaintiff's and the Classes' PII exposed to unauthorized access.

66.    Defendant was entrusted with, stored, and otherwise had access to the PII of Plaintiff and Class Members.

67.    Defendant knew, or should have known, of the risks inherent to storing the PII of Plaintiff and Class Members, and to not ensuring that its products and services were secure.  These risks were reasonably foreseeable to Defendant.

68.    Defendant owed duties of care to Plaintiff and Class Members whose PII had been entrusted to them.

69.    Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security in connection with marketing, sale, and use of its services and products. Defendant had a duty to safeguard Plaintiff's and Class Members' PII and to ensure that their systems and products adequately protected PII.

70.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

71.     Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' PII.

72.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

73.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

74.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

75.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members and are entitled to damages in an amount to be proven at trial.

### COUNT II
### Negligence Per Se

76.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth

herein.

77.     Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Class.

78.     Pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, Defendant had a duty to provide adequate data security practices to safeguard Plaintiff's and Class Members' PII.

79.     Pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Member's PII.

80.     Pursuant to the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100, *et seq*., Defendant had a duty to implement reasonable and adequate safeguards and security practices to protect Plaintiff's and Class Member's PII.

81.     Pursuant to the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. § 6501-6505, Defendant had a duty to provide adequate data security practices to safeguard Plaintiff's and Class Members' PII.

82.     Pursuant to other state and federal laws requiring the confidentiality of PII, including, but not limited to, the FTC Act, FERPA, and COPPA, among other laws, Defendant had a duty to implement reasonably safeguards to protect Plaintiff's and Class Members' PII.

83.     Defendant breached its duties to Plaintiff and Class Members under the FTC Act, FERPA, and COPPA, among other laws, by failing to provide fair, reasonable, or adequate data security in order to safeguard Plaintiff's and Class Members' PII.

84.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

85.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

86.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties.  Defendant knew or should have known that it was failing to meet its duties, and that its breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII/PHI.

87.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

88.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
### Invasion of Privacy

89.   Plaintiff realleges each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

90.   Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Class.

91.   Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in the PII that Defendant disclosed without authorization.

92.   Defendant owed a duty to Plaintiff and Class Members to keep their PII confidential.

93.   Defendant failed to protect and release to unknown and unauthorized third parties the PII of Plaintiff and Class Members.

94.   By failing to keep Plaintiff's and Class Members' PII safe and disclosing PII to unauthorized parties for unauthorized use, Defendant unlawfully

invaded Plaintiff's and Class Member's privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) improperly using their PII properly obtained for a specific purpose for another purpose, or disclosing it to a third party; (iii) failing to adequately secure their PII from disclosure to unauthorized persons; and (iv) enabling the disclosure of Plaintiff's and Class Members' PII without consent.

95.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider their actions highly offensive.

96.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII was unduly frustrated and thwarted, and caused damages to Plaintiff and Class Members.

97.    In failing to protect Plaintiff's and Class Members' PII, and in disclosing Plaintiff's and Class Members' PII, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

98.    Plaintiff seeks injunctive relief on behalf of the Classes, restitution, as well as any and all other relief that may be available at law or equity.  Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Classes.

## COUNT IV
### Breach of Confidence

99.    Plaintiff realleges each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

100.   Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Class.

101.   At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Defendant.

102.   Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

103.   Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

104.   Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

105.   Defendant voluntarily received in confidence Plaintiff's and Class Members' PII with the understanding that PII would not be disclosed or disseminated to unauthorized third parties or to the public.

106.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

107.   As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

108.   But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

109.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' PII.  Defendant knew or should have known that its methods of accepting, storing, transmitting and using Plaintiff's and Class Members' PII/PHI was inadequate.

110.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

111.    As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
### Breach of Contract

112.    Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

113.    Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Subclass.

114.   Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

115.   Plaintiff and the Class Members are parties to contracts with Illuminate. Under the circumstances, recognition of a right to performance by Plaintiff and the Class Members is appropriate to effectuate the intentions of the parties to these contracts.  One or more of the parties to these contracts intended to give Plaintiff and the Class Members the benefit of the performance promised in the contracts.

116.   Defendant breached these agreements, which directly and/or proximately caused Plaintiff and the Class Members to suffer substantial damages.

117.   Accordingly, Plaintiff and Class Members are entitled to damages, restitution, disgorgement of profits and other relief in an amount to be proven at trial.

## COUNT VI
### Violation of the California Consumer Privacy Act,
### Cal. Civil Code §§ 1798.100, *et seq.*

118.   Plaintiff realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

119.   Plaintiff brings this claim on behalf of the Class.

120.   At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Defendant.

121.   Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

122.   Plaintiff and Class Members provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

123.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

124.   Through the above-detailed conduct, Defendant violated California Civil Code section 1798.150 by failing to prevent Plaintiff's and Class Members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

125.   As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' PII, including, among others, names, dates of birth, academic information, special education status, financial status, and contact information, was subjected to unauthorized access and exfiltration, theft, and disclosure.

126.   Plaintiff seeks injunctive relief on behalf of the Classes as well as other equitable relief.  Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Classes.

127.   In accordance with Civil Code section 1798.150(b), Plaintiff will serve Defendant with notice of violation of Civil Code section 1798.150(a) and a demand for relief.  If Defendant fails to properly respond to Plaintiff's notice letter or agree to timely and adequately rectify the violations detailed above, Plaintiff will also seek actual, punitive, and statutory damages, as well as restitution, attorneys' fees and costs, and any other relief the Court deems proper.

**COUNT VII**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

128.   Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

129.   Plaintiff brings this claim on behalf of the Class.

130.   Defendant has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because Defendant's conduct, as described herein, violated the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.* Further, Defendant breached its duties pursuant to the FTC Act, 15 U.S.C. § 45, FERPA, CCPA, and COPPA to implement reasonable safeguards to protect Plaintiff's and Class Member's PII.

131.   Plaintiff has standing to pursue this claim because they have been injured by virtue of the wrongful conduct alleged herein.

132.   The Unfair Competition Law is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205.

133.   As a direct and proximate cause of Defendant's conduct, which constitutes unlawful business practices as alleged herein, Plaintiff and Class Members have been damaged and suffered ascertainable losses due to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect

1   Plaintiff's and Class Members' PII in its continued possession; and (vi) future costs

2   in terms of time, effort, and money that will be expended to prevent, detect, contest,

3   and repair the impact of the PII compromised as a result of the Data Breach for the

4   remainder of the lives of Plaintiff and Class Members.

5       134.   Plaintiff and Class Members are thereby entitled to recover restitution

6   and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys,

7   interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class

8   action, as well as any and all other relief that may be available at law or equity.

9   **COUNT VIII**
10   **Colorado Security Breach Notification Act,**
    **Colo. Rev. Stat. §§ 6-1-716, *et seq.***

11       135.   The Colorado Plaintiff identified above, individually and on behalf of

12   the Colorado Subclass, repeats and alleges all paragraphs, as if fully alleged herein.

13       136.   Plaintiff brings this claim on behalf of the Colorado Subclass.

14       137.   Illuminate is a business that owns or licenses computerized data that

15   includes Personal Information as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-

16   716(2).

17       138.   Illuminate is required to accurately notify Plaintiff and Colorado

18   Subclass members if it becomes aware of a breach of its data security program in the

19   most expedient time possible and without unreasonable delay under Colo. Rev. Stat.

20   § 6-1-716(2).

21       139.   Because Illuminate was aware of a breach of its security system, it had

22   an obligation to disclose the data breach in a timely and accurate fashion as mandated

23   by Colo. Rev. Stat. § 6-1-716(2).

24       140.   By failing to disclose the Data Breach in a timely and accurate manner,

25   Illuminate violated Colo. Rev. Stat. § 6-1-716(2).

26       141.   As a direct and proximate result of Blackbaud's violations of Colo. Rev.

27   Stat. § 6-1-716(2), Plaintiff and Colorado Subclass members suffered damages, as

28   described above.

142.  Plaintiff and Colorado Subclass members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

**COUNT IX**
**Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101, *et seq.***

143.  The Colorado Plaintiff identified above, individually and on behalf of the Colorado Subclass, repeats and alleges all paragraphs as if fully alleged herein.

144.  Plaintiff brings this claim on behalf of the Colorado Subclass.

145.  Illuminate is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6). Illuminate engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

146.  Plaintiff and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Illuminate or successors in interest to actual consumers.

147.  Illuminate engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to:

148.  Knowingly making a false representation as to the characteristics of products and services;

149.  Representing that services are of a particular standard, quality, or grade, though Illuminate knew or should have known that there were or another;

150.  Advertising services with intent not to sell them as advertised; and

151.  Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

152.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Colorado Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

153.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the Data Breach;

CLASS ACTION COMPLAINT

154.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Colorado Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, COPPA, 15 U.S.C. §§ 6501-6505, and FERPA, among other laws, which was a direct and proximate cause of the Data Breach; and

155.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Colorado Subclass members' PII, including by implementing and maintaining reasonable security measures.

156.   Illuminate also violated Colo. Rev. Stat. § 6-1-105(1) by committing the acts described throughout.

157.   Illuminate's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Illuminate's data security and ability to protect the confidentiality of consumers' PII.

158.   Illuminate's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the Colorado Subclass members, that their PII was not exposed and misled Plaintiff and the Colorado Subclass members into believing they did not need to take actions to secure their identities.

159.   Illuminate intended to mislead Plaintiff and Colorado Subclass members and induce them to rely on its misrepresentations and omissions.

160.   Had Illuminate disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Illuminate would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Illuminate was trusted with sensitive and valuable PII regarding an untold number of students, including Plaintiff, the Class, and the Colorado Subclass. Illuminate accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Illuminate held itself out as maintaining a

secure platform for PII, Plaintiff, the Class, and the Colorado Subclass members acted reasonably in relying on Illuminate's misrepresentations and omissions, the truth of which they could not have discovered.

161.   Illuminate acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff and Subclass members' rights.

162.   As a direct and proximate result of Illuminate's deceptive trade practices, Colorado Subclass members suffered injuries to their legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

163.   Illuminate's deceptive trade practices significantly impact the public, as numerous Colorado school districts were affected and a yet untold number of students' PII was disclosed.

164.   Plaintiff and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Illuminate's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT X
### Declaratory Relief
### 28 U.S.C. § 2201

165.   Plaintiff realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

166.   Plaintiff brings this claim on behalf of the Class, or in the alternative, the Colorado Subclass.

167.   An actual controversy has arisen and now exists between Plaintiff and the putative Classes on the one hand, and Defendant on the other, concerning Defendant's failure to protect Plaintiff's and Class Members' PII in accordance with applicable state and federal regulations and the agreements between the parties.

Plaintiff and the Class Members contend that Defendant failed to maintain adequate and reasonable privacy practices to protect their PII while on the other hand, Defendant contends they have complied with applicable state and federal regulations and its agreements with Plaintiff and Class Members to protect their PII.

168.   Accordingly, Plaintiff and Class Members entitled to and seek a judicial determination of whether Defendant has performed, and are performing, their statutory and contractual privacy practices and obligations necessary to protect and safeguard Plaintiff's and Class Members' PII from further unauthorized, access, use, and disclosure, or insecure disposal.

169.   A judicial determination of the rights and responsibilities of the parties over Defendant's privacy practices is necessary and appropriate at this time so that: (1) that the rights of the Plaintiff and the Classes may be determined with certainty for purposes of resolving this action; and (2) so that the Parties will have an understanding of Defendant's obligations in the future given its continuing legal obligations and ongoing relationships with Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of ]him/her]self and on behalf of the Classes, prays for relief as follows:

A.   For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 against Defendant, appointing Plaintiff as Class Representative of the Classes, and Kaplan Fox & Kilsheimer LLP as Class Counsel;

B.   Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.   Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Classes have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

1    D.    Prejudgment interest to the extent allowed by the law;

2    E.    Awarding all costs, experts' fees and attorneys' fees, expenses and

3          costs of prosecuting this action; and

4    F.    Such other and further relief as the Court may deem just and proper.

5                        **JURY TRIAL DEMAND**

6    Plaintiff demands a trial by jury on all issues so triable.

7                              Respectfully submitted,

8    DATED: July 28, 2022         **KAPLAN FOX & KILSHEIMER LLP**

9                              By:  /s/ *Laurence D. King*
10                                   Laurence D. King

11                             Laurence D. King (SBN 206423)
                               Matthew B. George (SBN 239322)
12                             Blair E. Reed (SBN 316791)
                               1999 Harrison Street, Suite 1560
13                             Oakland, CA 94612
                               Telephone:  415-772-4700
14                             Facsimile:   415-772-4707
                               Email:  *lking@kaplanfox.com*
15                                      *mgeorge@kaplanfox.com*
                                        *breed@kaplanfox.com*

16                             **KAPLAN FOX & KILSHEIMER LLP**
                               Joel B. Strauss (*pro hac vice* to be filed)
17                             850 Third Avenue, 14th Floor
                               New York, NY 10022
18                             Telephone:  212-687-1980
                               Facsimile:  212-687-7714
19                             Email:  *jstrauss@kaplanfox.com*

20                             **KAPLAN FOX & KILSHEIMER LLP**
                               Justin B. Farar (SBN 211556)
21                             12400 Wilshire Boulevard, Suite 460
                               Los Angeles, CA  90025
22                             Telephone:  310-614-7260
                               Facsimile:  310-614-7260
23                             Email:  *jfarar@kaplanfox.com*

24                             *Attorneys for Plaintiff Lucas Cranor and the
                               Proposed Class*
25

26

27

28